UNITED STATES, Appellee,

v.

**Rickey D. JONES, Sergeant
U.S. Army, Appellant.**

No. 67,964.
CMR No. 9101249.

U.S. Court of Military Appeals.

Argued March 4, 1993.

Decided Aug. 3, 1993.

For Appellant: *Captain Michael E. Smith* (argued); *Colonel Malcolm H. Squires, Jr., Lieutenant Colonel James H. Weise, Major James M. Heaton* (on brief); *Colonel Robert B. Kirby.*

For Appellee: *Colonel Dayton M. Cramer* (argued); *Lieutenant Colonel Joseph A. Russelburg, Major Joseph C. Swetnam, Captain Jane F. Polcen* (on brief).

*Opinion of the Court*

CRAWFORD, Judge:

Appellant was tried by a special court-martial composed of officer members. Pursuant to his pleas, he was found guilty of violating a general regulation by consuming alcoholic beverages while on duty; and incapacitation for duty, in violation of Articles 92 and 134, Uniform Code of Military Justice, 10 USC §§ 892 and 934, respectively. Contrary to his pleas, he was convicted of assault and battery, in violation of Article 128, UCMJ, 10 USC § 928. The convening authority approved the sentence of a bad-conduct discharge and reduction to the lowest enlisted grade. The Court of Military Review affirmed the findings and sentence without opinion. We granted review on the following specified issue:

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY INSTRUCTING THE PANEL THAT THEY HAD THE OPTION TO BEGIN DELIBERATIONS ON SENTENCE AT A SPECIFIC TIME WITHOUT RECONVEN-

ING REGARDLESS OF WHETHER THEY ALL HAD REASSEMBLED.

For the reasons contained herein, we affirm the decision of the Court of Military Review.

## STATEMENT OF THE FACTS

The following colloquy took place immediately after the military judge gave the panel members instructions on sentencing:

MJ: ... Colonel Batchelor, do you desire to take a brief recess before you begin deliberations or would you like to begin immediately? .

PRES (BATCHELOR): We need a break, sir.

MJ: Well, why don't we take about 15 minutes. Let's do that. When you conclude your break don't start on your deliberations until three[*] o'clock and you've all assembled from your break. Is that satisfactory with all of you?

DC: Yes, sir.

MJ: Instead of recalling them back in again.

TC: Yes, sir.

DC: Yes, sir.

* * *

MJ: Now, I'm going to, again, close court for you to begin deliberations. Don't—you may begin at three [sic] o'clock or when you're all assembled. I won't call you back to court for the purposes of sending you off.

The court will be closed to deliberate on a sentence.

---

The record of trial notes that the court closed at 3:45 p.m. and opened at 4:20 p.m. for announcement of sentence.

The military judge had instructed the members prior to their lunch break not to discuss the case with others or among themselves during the break. He also instructed the members prior to sentencing deliberations, pursuant to paragraph 2–30, Military Judge's Benchbook at 2–37 (Dept.

of Army Pamphlet 27–9 (Change 1, 15 Feb. 1985)), that no one else was to enter the deliberation room during their closed deliberations and that they were not to "consult the Manual for Courts–Martial or any other legal publication" during their deliberations.

RCM 813(b), Manual for Courts–Martial, United States, 1984, provides that the military judge shall account for all members after a recess. The Benchbook contains the following instruction:

If it is necessary for administrative reasons (and I mention this because there is no latrine immediately adjacent to your deliberation room) your deliberations may be interrupted by a recess. However, you must come in, formally recess, reassemble, and formally close again for your deliberations. This is a vital legal requirement.

Benchbook, *supra* at 2–37.

While this paragraph in the Benchbook concerns deliberations on findings, the reason for this rule applies equally to deliberations on sentencing. Clearly the rationale behind the rule is to ensure that all members are present for deliberations and are not subject to improper communication from any source. This guidance was not followed in this case. Rather, the military judge left reassembling totally up to the members and failed to provide for a routine administrative "head check" on the record as provided by RCM 813(b).

In many federal and state courts a bailiff serves as an escort for the jurors to assure that there is no improper communication with them. In the military justice system many judges require that a bailiff be appointed. There is no indication in this record, however, that a bailiff was assigned to this trial, and there is no floorplan of the courtroom, the witness' waiting room, counsel's room, the judge's chambers, and restrooms.

## DISCUSSION

■ The military judge is required to "exercise reasonable control over the pro-

---

* It is evident from the record that the military judge was referring to 4 o'clock.

ceedings," RCM 801(a)(3), including accounting for members after a recess, RCM 813(b). Such control requires the judge to give "appropriate instructions on sentence." RCM 1005(a). RCM 1006(a) provides, "The members shall deliberate and vote after the military judge instructs the members on sentence. Only the members shall be present during deliberations and voting."

The Court of Military Review had a similar factual situation in *United States v. Peebles*, 45 CMR 406 (ACMR), *rev'd on other grounds*, 21 USCMA 466, 45 CMR 240 (1972), except the judge noted that "[t]he court members went into closed session." 45 CMR at 407. In that case, the Court of Military Review "conclude[d] that the court members were aware of their duties with respect to sentencing and that, absent any indication to the contrary, they performed their duties properly." *Id.* at 410.

This case involves more than an instructional error; it involves a procedural error caused by the instructional error. Here not only did trial defense counsel not object to the procedural instructions, but also he expressly indicated that the change in procedures was "satisfactory."

RCM 1005(f) provides, "Failure to object to an instruction or to omission of an instruction before the members close to deliberate on the sentence constitutes waiver of the objection in the absence of plain error." *See United States v. Kendrick*, 29 MJ 792 (ACMR 1989) (instruction requiring junior member to count number of ballots cast rather than votes was not plain error). *See also United States v. Fisher*, 21 MJ 327 (CMA 1986). We have more than a mere failure to object in this case. We have defense counsel's affirmative agreement with the proposed procedure.

As we stated in *United States v. Causey*, 37 MJ 308, 311 (CMA 1993), decided this day:

> This [forfeiture] rule is designed, in part, to prevent defense counsel from remaining silent, making no objection, and raising the issue on appeal for the first time.

It is important to "encourage all trial participants to seek a fair and accurate trial the first time around." *United States v. Frady*, 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982). ... As noted by the Supreme Court, "It is simply not possible for an appellate court to assess the seriousness of the claimed error." *United States v. Young*, 470 U.S. 1, 16, 105 S.Ct. 1038, 1047, 84 L.Ed.2d 1 (1985). As we have previously determined, "An omission [of the objection] on the part of trial defense counsel ... supports the inference that, even if erroneous, such [actions] were deemed at the time to be of little consequence." *United States v. Grandy*, 11 MJ 270, 275 (CMA 1981).

The Supreme Court recently addressed an analogous situation in which alternate jurors were permitted in the jury room during deliberations with the agreement of counsel for both sides. The Supreme Court held that the procedural error did not rise to the level of plain error. *United States v. Olano*, —— U.S. ——, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

■ The rationale behind forfeiture is judicial economy. If an individual is permitted not to object and then can raise the issue on appeal, both the parties and the public are put to the expense of retrial. It is important for the objection to be made at the trial level so it can be resolved there to avoid the expense of an appeal. Of course, the forfeiture rule is not absolute, and this Court will not allow forfeiture where it affects the substantial rights of appellant and would otherwise result in a "miscarriage of justice" so as to "seriously affect the fairness, integrity or public reputation of judicial procceedings." *See United States v. Olano, supra* at ——, 113 S.Ct. at 1779.

Assuming, *arguendo*, that the military judge erred, that error did not amount to a plain error that substantially prejudiced appellant. *See United States v. Fisher*, 21 MJ 327 (CMA 1986). What happened in this case, although not a wise practice,

does not undermine the structural set up for military criminal trials, such as the total deprivation of the right to counsel or to a judge who was impartial. *See Arizona v. Fulminante,* 499 U.S. 279, —— —— ——, 111 S.Ct. 1246, 1264–65, 113 L.Ed.2d 302 (1991).

The judge properly instructed the members that no one was to enter their closed deliberations. There has been no post-trial allegation indicating that any improper actions took place on the part of witnesses, members, or parties to this trial. Thus, if there was any error here, it was not prejudicial.

We emphasize in the strongest terms that the administrative instruction in the Benchbook be given by all judges prior to deliberation on findings and sentence. As admitted by government counsel during oral argument, what happened in this case was not "smart" practice. We have good reason to be proud of the military criminal justice system. In many instances it is a system that extends to servicemembers more rights and protections than those enjoyed by their counterparts in the civilian community. But it is often not enough that the military justice system be fair. It must also be perceived as fair by those men and women subject to the Uniform Code of Military Justice. As Chief Judge Sullivan noted in writing for the Court, "Courts-martial must not only be fair but must appear fair to effectively further the cause of good order and discipline in the armed forces." *United States v. Berry,* 34 MJ 83, 88 (1992). Although we conclude that appellant suffered no prejudice, clearly the perception of fairness would have been greatly enhanced if the military judge had followed the Benchbook instruction with respect to reassembling court members after a recess.

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges COX, GIERKE, and WISS concur.